# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 14-20942-TLM |
| LESLIE ANN JENSEN-EDWARDS, ) | |
| ) | Chapter 13 |
| Debtor. ) | |
| _____ ) | |
| ) | |
| LESLIE ANN JENSEN-EDWARDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. No. 14-07025-TLM |
| ) | |
| NATIONSTAR MORTGAGE, LLC, ) | |
| LEHMAN BROTHERS FSB, GS ) | |
| TRUST, NORTHWEST TRUSTEE ) | |
| SERVICES, INC., and DOES I-X, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**MEMORANDUM OF DECISION ON
MOTION FOR SUMMARY JUDGMENT**
_____

Leslie Ann Jensen-Edwards ("Debtor") filed a voluntary chapter 13 petition on November 6, 2014, commencing Case No. 14-20942-TLM.[1] Debtor is the owner of real estate located at 17287 W. Summerfield Rd., in Post Falls, Idaho (the "Property"). On December 5, 2014, Debtor, appearing *pro se*, filed a

---

[1] Unless otherwise indicated, all statutory references in this Decision are to the Bankruptcy Code, Title 11 U.S. Code §§ 101–1532. References to "Rules" are to the Federal Rules of Bankruptcy Procedure, and to "Civil Rules" are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION - 1

complaint against Nationstar Mortgage, LLC ("Nationstar"), Northwest Trustee Services, Inc. ("NTS"), Lehman Brothers FSB ("Lehman Brothers"), and GS Trust, initiating this adversary proceeding, Adv. No. 14-07025-TLM. Nationstar and NTS (collectively "Defendants") filed an amended motion for summary judgment against Debtor, Doc. No. 37 ("Motion"). Debtor responded with an "answer" and "amended answer" to the Motion, Doc. Nos. 43, 46.[2] The Motion came on for hearing on June 29, 2015, and it was taken under advisement following oral argument by Debtor and Defendants' counsel.[3]

This Decision addresses the arguments made, and disposes of the Motion.

## BACKGROUND AND FACTS[4]

On May 18, 2005, Debtor executed a deed of trust on the Property, which was then recorded on May 25, 2005. It secured repayment of $345,000 borrowed by Debtor. The deed of trust stated that Lehman Brothers was the lender;[5]

---

[2] Because Debtor appears *pro se*, the Court considers her papers and pleadings liberally. *Hyatt v. Hyatt (In re Hyatt)*, 2011 WL 6179267, *4 (Bankr. D. Idaho Dec. 13, 2011) (citing *Kashani v. Fulton (In re Kashani)*, 190 B.R. 875, 883 (9th Cir. BAP 1995)). But despite liberal construction, *pro se* litigants are still required to abide by court rules. *Arnold v. Gill (In re Arnold)*, 252 B.R. 778, 781 n.2 (9th Cir. BAP 2000). Debtor's responses were not in the form required by LBR 7056.1, but their substance has been considered.

[3] Though the Motion was not directed to GS Trust, its counsel, Wesley Hoyt, appeared at the hearing and, as a courtesy, was allowed to address the Court. His comments were not helpful.

[4] The facts are drawn not only from the submissions of all parties in this case but also from the Idaho Supreme Court's decision in *Edwards v. Mortgage Electronic Registration Systems, Inc.*, 300 P.3d 43 (Idaho 2013), discussed further below.

[5] The full name used was Lehman Brothers Bank, FSB, a Federal Savings Bank.

MEMORANDUM OF DECISION - 2

Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for the lender, was the beneficiary; and Alliance Title was the trustee.[6]

On November 30, 2009, MERS as nominee for Lehman Brothers appointed Pioneer Lender Trustee Services as successor trustee, and that appointment was recorded on December 3, 2009.

On February 8, 2011, an assignment of the deed of trust to Federal National Mortgage Association ("FNMA") was recorded. On January 8, 2013, a further assignment of the deed of trust to Northwest Lehman Brothers 2005 Corporate Pass-Through Certificates Series 2005 was recorded, but then a corrective assignment to Aurora Loan Services, LLC ("Aurora") was recorded February 27, 2014. Then, also on February 27, Aurora assigned the deed of trust to Nationstar. The same day, Nationstar executed and recorded an appointment of NTS as successor trustee.[7]

During the course of these events, a notice of default and election to sell under the deed of trust was recorded on December 3, 2009, alleging defaults from and after August 2009. Sale was set for April 8, 2010.

---

[6] The Idaho Supreme Court observed that an original deed of trust in 2003 to the benefit of American Gold Mortgage Corp. secured payment of a note, and that the 2005 deed of trust securing Lehman Brothers was executed when Debtor "refinanced the debt secured by her residence." 300 P.3d at 46.

[7] In addition to these assignments of the deed of trust, the note, as attached to Nationstar's proof of claim, Claim No. 1-1, shows endorsements from Lehman Brothers Bank, FSB, to Lehman Brothers Holdings, Inc., and then to Aurora Loan Services, LLC, and then an allonge from Aurora Loan Services, LLC "in blank."

MEMORANDUM OF DECISION - 3

Debtor filed a state court lawsuit on April 1, 2010. *Edwards v. Lehman Brothers Bank, et al.*, Case No. CV10-2745, First Judicial District, Kootenai County, Idaho (the "State Court Case").[8] Debtor later amended the complaint in June 2010. Debtor argued that the various defendants lacked standing and had no interest in the note or deed of trust; that securitization made the loan unenforceable, cured her default, or satisfied the loan obligation; and that the note and deed of trust were "split." She sought declaratory judgment that the defendants lacked any legal or equitable rights in the note or deed of trust and permanent injunctive relief barring any of them from seeking to foreclose on the Property.

On November 16, 2010, by a written decision and order, the State Court Case was dismissed with prejudice for failure to state a claim. Debtor appealed to the Idaho Supreme Court which, on April 25, 2013, affirmed the district court in *Edwards v. Mortgage Electronic Registration Systems, Inc.*, 300 P.3d 43 (Idaho 2013).

The Idaho Supreme Court addressed several issues.[9] Significant here is its conclusion that the defendants in that case had standing and authority to foreclose

---

[8] The suit was captioned as *Edwards v. Lehman Brothers Bank, FSB, as Lender; and Mortgage Electronic Registration Systems, Inc., as Nominee and Beneficiary; and Quality Loan Services, as attorney in fact and Successor Trustee; and Pioneer Lender Trustee Services, LLC, as Trustee; and Aurora Loan Services as Servicer.* It was filed as a "Complaint for Declaratory and Injunctive Relief and to Cancel Trustee's Sale Scheduled for April 8, 2010."

[9] The decision notes that attorney Wesley Hoyt represented Debtor at oral argument. *Id.* at 45, 52. As mentioned above, Hoyt represents the defendant GS Trust in the instant litigation.

MEMORANDUM OF DECISION - 4

the subject deed of trust.

The Supreme Court recognized that the "beneficiary" under the deed of trust is the person named or otherwise designated in the deed of trust as the person for whose benefit the deed of trust is given. *Id.* at 48 (citing Idaho Code § 45-1502(1)). In this case, that beneficiary was initially Lehman Brothers. It found that MERS was not the beneficiary but, instead, by definition in the deed of trust, was the "nominee" of the lender and its successors and assigns. Thus, it was an "agent" of Lehman Brothers. "Designating MERS as the beneficiary in its representative capacity as nominee of Lehman Brothers and its successors and assigns was legally no different from designating Lehman Brothers and its successors and assigns as the beneficiary." *Id.* at 49. The deed of trust was found to conform to Idaho law.[10]

As noted, Alliance Title was the initial trustee under the deed of trust. MERS, as nominee of the lender, replaced Alliance Title with Pioneer Lender Trustee Services, LLC ("Pioneer"), and the substitution was recorded by Quality Loan Service Corp. of Washington ("Quality Loan") as attorney in fact for Pioneer. *Id.* at 46. The Supreme Court found that the recording of the notice of

---

[10] The Idaho Supreme Court noted that, in seeking to stop the nonjudicial foreclosure sale of her residence, Debtor had the burden of proving a legal ground to do so. It observed that "Under the act governing deeds of trust, 'a trustee may initiate nonjudicial foreclosure proceedings on a deed of trust without first proving ownership of the underlying note or demonstrating that the deed of trust beneficiary has requested or authorized the trustee to initiate those proceedings.'" *Id.* at 51 (citing *Trotter v. Bank of New York Mellon*, 275 P.3d 857, 862 (Idaho 2012)).

MEMORANDUM OF DECISION - 5

default required under Idaho Code § 45-1505(3) by Quality Loan was with proper authority. *Id.* at 49. It stated:

> [U]nder the law, any instructions by MERS that the trustee proceed with foreclosing the deed of trust constituted the actions of the lender.
>
> The trustee, not the beneficiary, is the one who forecloses the deed of trust. I.C. § 45-1505. The beneficiary has the authority to appoint a successor trustee, I.C. § 45-1504(2), and MERS, as nominee of the lender, had the authority to appoint Pioneer as successor trustee. Therefore, Pioneer had the authority to institute foreclosure proceedings.

*Id.*

The Supreme Court disposed of several of Debtor's other attacks, including claims and arguments about who owned the original note; whether ownership of the note had been "severed" from the ownership of the deed of trust; whether MERS or any other defendant had ownership of the note; and so on. Those claims, the Supreme Court held, were properly rejected given Debtor's failure to submit admissible evidence on any of the allegations. *Id.* at 51.[11] Thus the district court decision was affirmed.

The foreclosure sale occurred in January 2011. But the beneficiary decided to rescind the sale, and a rescission of the trustee's deed was recorded in August 2011. *Id.* at 47.[12]

---

[11] That dismissal was based on Debtor's failure to present admissible evidence makes it no less a dismissal on the merits and final and conclusive as against her.

[12] The Idaho Supreme Court concluded that this event did not moot the appeal. *Id.* at 47–48.

MEMORANDUM OF DECISION - 6

When Debtor filed her chapter 13 case, she listed the Property as her residence. Her plan and amended plan, Doc. Nos. 27 and 33, propose to pay GS Trust as a lien creditor on the Property[13] but to "avoid" Nationstar's security interest.[14] Nationstar objected to confirmation of the plan. It noted, among other things, a lack of provision of payment of an arrearage of almost $169,000.[15] The chapter 13 process has come to a standstill as this adversary proceeding has been litigated.

## DISCUSSION AND DISPOSITION

There are two fundamental reasons why Defendants' Motion must be granted. First, the instant complaint is barred in multiple regards by the *Rooker-Feldman* doctrine. Second, Debtor's claims that were not expressly and directly answered in *Edwards v. MERS* are nonetheless barred by the principles of claim preclusion.

---

[13] The complaint alleges that GS Trust holds a "mechanic's lien" as does GS Trust's answer. There has been no proof of claim filed in the underlying chapter 13 case by GS Trust, and no other submission as yet establishing that creditor's interest.

[14] The plans filed by Debtor are not in the form required by the Local Bankruptcy Rules and General Orders of the Court. And the § 522(f) lien avoidance suggested by Debtor in her plan is facially inapplicable since the subject deed of trust is not a "judicial lien" within § 522(f)(1)(A). *See also* § 101(36). Despite the appearance of counsel for Debtor in the underlying chapter 13 case in January 2015, these problems have not been remedied.

[15] Nationstar timely filed a proof of claim in the total amount of $463,385.30 of which $168,914.08 represents arrearages as of filing. *See* Claim No 1-1. Debtor's amended schedules, filed after the appearance of counsel, assert the value of the Property is $659,728 and characterize Nationstar's claim as contingent, unliquidated and disputed. Doc. No. 46.

MEMORANDUM OF DECISION - 7

A. *Rooker-Feldman*

The *Rooker-Feldman* doctrine[16] prohibits a federal court from exercising jurisdiction over a lawsuit that is a de facto appeal of a state court judgment. *Carmona v. Carmona*, 603 F.3d 1041, 1050–51 (9th Cir. 2010); *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 858–59 (9th Cir. 2008); *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004); *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003).

> [The *Rooker-Feldman* doctrine] stands for the relatively straightforward principle that federal district courts do not have jurisdiction to hear de facto appeals from state court judgments. *Noel*, 341 F.3d at 1155. The jurisdictional prohibition arises from a negative inference drawn from 28 U.S.C. § 1257 which grants jurisdiction to review state court decisions in the United States Supreme Court. *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004) (citation omitted). Because it grants jurisdiction to the Supreme Court, section 1257 impliedly prohibits lower federal courts from reviewing state court decisions. *Id.*
>
> Stated simply, the *Rooker-Feldman* doctrine bars suits "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Exxon Mobil Corp. v. Saudi Basic Indust. Corp.*, 544 U.S. 280, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005). In practice, the *Rooker-Feldman* doctrine is a fairly narrow preclusion doctrine, separate and distinct from res judicata and collateral estoppel. *See Noel*, 341 F.3d at 1162–64.
>
> We have previously explained how federal courts should distinguish a forbidden de facto appeal of a state court decision that is barred by *Rooker-Feldman* from a suit that is barred by other

---

[16] The doctrine is so named based on *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

MEMORANDUM OF DECISION - 8

preclusion principles. A suit brought in federal district court is a "de facto appeal" forbidden by *Rooker-Feldman* when "a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision." *Id.* at 1164. In contrast, if a plaintiff "asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction." *Id.*

*Carmona*, 603 F.3d at 1050. Additionally:

> *Rooker-Feldman* is a powerful doctrine that prevents federal courts from second-guessing state court decisions by barring the lower federal courts from hearing de facto appeals from state-court judgments: If claims raised in the federal court action are "inextricably intertwined" with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules, then the federal complaint must be dismissed for lack of subject matter jurisdiction. *See Feldman*, 460 U.S. at 483 n.16 & 485, 103 S.Ct. 1303. Simply put, "the United States District Court, as a court of original jurisdiction, has no authority to review the final determinations of a state court in judicial proceedings." *Worldwide Church of God v. McNair*, 805 F.2d 888, 890 (9th Cir. 1986).

*Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003). "[I]t is apparent . . . that the federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, concurring) (citing *Feldman*).

The applicability of the doctrine in bankruptcy court is well recognized. *See*, *e.g.*, *Kempton v. Clark (In re Clark)*, 2014 WL 5646640, *9–10 (9th Cir. BAP Nov. 4, 2014); *McCarthy v. Nature's Wing Fin Design, LLC (In re McCarthy)*,

MEMORANDUM OF DECISION - 9

2011 WL 4485866, *10 n.10 (9th Cir. BAP Aug. 10, 2011).[17]

The complaint herein is characterized by Debtor as "Adversary Proceeding Action at Law in the Form of a Verified Complaint to Set Aside a Fraudulent Foreclosure, for Complete Lack and Want of Standing in the Foreclosure[,] and for Quiet Title."  The complaint seeks a $500,000 judgment against Defendants for "slander of title" based on their documents which allegedly are not valid under Idaho law and "illegally" create a lien clouding her title to the Property.  Adv. Doc. No. 1 at 6.  Debtor alleges that the invalidity of Defendants' claim arises from a severance of the note and deed of trust by assignment of the note without corresponding and/or effective assignment of the deed of trust.  *Id.* at 10–15.  Debtor also contends that the assignment of the note caused a satisfaction of the deed, rendering the deed of trust unenforceable.  *Id.* at 15–16.

The state court complaint, *see* Adv. Doc. No. 10-1, addressed ultimately by the Idaho Supreme Court in *Edwards v. MERS*, alleged among other things[18] a severance of the note and deed of trust, *id.* at 6–7, and that the defendants lacked any legal standing to institute or maintain foreclosure of the Property under the documents, and lacked any legal interest in or under the note or deed of trust, *id.* at

---

[17] There are certainly nuances to the application of the doctrine in certain bankruptcy proceedings.  *See*, *e.g.*, *Huse v. Huse-Sporsem, A.S. (In re Birting Fisheries, Inc.)*, 300 B.R. 489, 497–501 (9th Cir. BAP 2003); *Pavelich v. McCormick, Barstow, Sheppard, Wayte & Carruth, LLP (In re Pavelich)*, 229 B.R. 777, 782–83 (9th Cir. BAP 1999).  Those types of situations are not presented in the instant adversary proceeding.

[18] As in the instant proceeding, the state court action made several allegations regarding the ineffectiveness of the documents due to the "securitization" of the loan.

MEMORANDUM OF DECISION - 10

10. Debtor therefore requested injunction against the attempted foreclosure.

The Idaho Supreme Court affirmed the district court's rejection of these arguments, and expressly found that the interests of the state court defendants in the note and deed of trust complied with Idaho law, allowing them to pursue foreclosure of the deed of trust on the Property.  The record before this Court establishes that the current Defendants are the successors in interest to the state court defendants, and obtained their interests in a manner complying with Idaho law as explained in *Edwards v. MERS*.  While Debtor sought to enjoin a foreclosure in the State Court Case and the present adversary seeks to quiet title, the contentions on which both lawsuits are predicated are the same.  This Court could not grant the relief sought in this adversary proceeding without rejecting the analysis of the Idaho Supreme Court.  The state court decision is "inextricably intertwined" and the *Rooker-Feldman* doctrine applies.[19]  Therefore, Defendants' Motion is well taken on this ground and will be granted.

**B.    Claim preclusion**

As this Court previously explained:

---

[19] An analogous situation was presented in *Robinson v. Porges*, 382 Fed. App'x. 133 (3d Cir. 2010).  There a debtor filed a federal court complaint alleging civil rights, state law and common law claims arising out of a state court foreclosure and sheriff's sale of his residence. That lawsuit followed several state court actions including a mortgage foreclosure action and ejection suit.  The plaintiff argued that the federal civil rights claims were not previously litigated and could not be viewed as "inextricably intertwined" with the state court adjudications.  The Circuit Court of Appeals disagreed, noting that the plaintiff sought return of his home "with free and clear deed and title" (*i.e.*, a quieted title) and that "Such an award could only be made by reviewing and rejecting the state court judgments."  *Id.* at 134–35.

MEMORANDUM OF DECISION - 11

> "Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not the relitigation of the claim raises the same issues as the earlier suit.'" *Taylor v. Sturgell*, 553 U.S. 880, 893 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)).

*In re Canyon Mgmt., LLC*, 2015 WL 435049, *3 (Bankr. D. Idaho Feb. 2, 2015); *see also Rencher v. PNC Bank, N.A.,* 2014 WL 1251467 (D. Idaho Mar. 24, 2014) (applying claim preclusion to an Idaho state court decision dealing with allegations of securitization, void deed of trust, void foreclosure sale and quieting tile).[20]

"The Full Faith and Credit Act requires that the federal courts give state court judgments the same preclusive effect those judgments would enjoy under the law of the state in which the judgment was rendered." *Lopez v. Emergency Serv. Restoration, Inc., (In re Lopez)*, 367 B.R. 99, 105 (9th Cir. BAP 2007) (citing 28 U.S.C. § 1738; *Lee v. TCAST Commc'ns, Inc. (In re Lee)*, 335 B.R. 130, 138 (9th Cir. BAP 2005)). Idaho law requires "(1) same parties; (2) same claim; and (3) final judgment" in order for a judgment to have claim preclusive effect. *Ticor Title Co. v. Stanion, II*, 157 P.3d 613, 618 (Idaho 2007); *see also Canyon Mgmt.*, 2015 WL 435049 at *3 (noting that claim preclusion applies when there is "(1) an identity of claims; (2) a final judgment on the merits; and (3) an identity or privity

---

[20] *See also Hindmarsh v. Mock*, 57 P.3d 803 (Idaho 2002) (noting that "[t]he doctrine of claim preclusion bars not only subsequent relitigation of a claim previously asserted, but also subsequent relitigation of any claims relating to the same cause of action which were actually made or which might have been made.").

MEMORANDUM OF DECISION - 12

of the parties.").

As explained in *Stratosphere Litig. LLC v. Grand Casinos, Inc.*, an identity of claims exists when two suits arise from "the same transactional nucleus of facts." 298 F.3d 1137, 1143 n.3 (9th Cir. 2002). And privity between parties exists when a party is "so identified in interest with a party to former litigation that he represents precisely the same right in respect to the same subject matter involved." *Id*.

The claims now before this Court arise from the same transactional nucleus of facts as were before the state district court and the Idaho Supreme Court. Debtor's causes for quieting title and declaring the invalidity of the creditors' rights and interests are the same as those asserted in the State Court Case. Debtor does assert one cause of action, a money judgment for slander of title, that was not specifically asserted before the state court. But it is based on the same transactional nucleus of facts regarding defects in and/or voidness of creditor rights due to securitization or improper assignment of notes or the deed of trust as were addressed in the State Court Case.

Privity of the parties also exists. Debtor is the same plaintiff and the Defendants are the successors in interest to those who successfully defended the State Court Case. The assignments to Nationstar and NTS complied with the legal requirements and analysis of the Idaho Supreme Court.

Therefore, the Court concludes claim preclusion applies here, and the

MEMORANDUM OF DECISION - 13

Motion is well taken.

### C. The motion to amend the complaint (TILA claims)

Debtor raised an additional contention in responding to the Motion. She argued that she "timely notified" Defendants in October 2012, and again in May 2015, of her rescission of the loan under the Truth-in-Lending-Act ("TILA") requirements. She also complains of TILA violations that support a claim for refund of charges and fees paid or other damages. Doc. No. 46 at 6–9. Defendants' response asserts three alternative basis for resolving the issue in their favor. First, they contend that since the TILA claim was not raised in the initial complaint, it should not be considered absent amendment of the complaint. Doc. No. 47 at 6. Second, they argue that the TILA rescission and related damage assertions constitute a claim that should have been, and was not, raised in the State Court Case and it is therefore now barred. *Id.* Third, they argue that Debtor's TILA arguments fail on the merits because the rescission asserted was untimely. *Id.* at 5–6. The TILA issues were discussed at the June 29, 2015 hearing on the Motion.

In apparent reaction to Defendants' contention that the complaint failed to raise TILA issues, Debtor filed a motion on July 6, 2015, after the Court took the Motion under advisement, seeking leave to amend her complaint. Doc. No. 50. Debtor did not set the matter for hearing, and Defendants did not respond to it.

The proposed amended complaint, Doc. No. 50-1, asserts the TILA claims

MEMORANDUM OF DECISION - 14

at pp. 18–22. Debtor claims a right to rescind the loan based on the provision of the two notices purporting to do so. She argues these notices were timely either because the transaction was never consummated or because the TILA three-year notice period was "equitably tolled." Other than rescission, Debtor asserts no TILA-related claims or rights to relief in this proposed amendment.

A plaintiff may not raise new allegations for the first time in opposition to summary judgment. *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 969 (9th Cir. 2006). *See also Quality Res. & Servs., Inc. v. Idaho Power Co.*, 706 F. Supp. 2d 1088, 1096 (D. Idaho 2010) (holding that new grounds raised by plaintiff in support of its breach of contract claim that were not part of the previously amended complaint could not be raised for the first time in summary judgment and would not be considered). This Court agrees, and finds the TILA rescission contention inappropriately and untimely raised.[21]

Were the TILA claim properly before the Court, there are at least two additional reasons it would be ineffective to support Debtor's opposition to the Motion.[22] The first reason is that it arises out of the same nucleus of transactional

---

[21] The District Court noted that, despite the general Circuit authority supporting a bar on issues so raised, there was authority to the effect that the court should treat the filing as a request to amend and consider whether a triable issue of material fact was presented. *Quality Res.*, 706 F. Supp. 2d at 1096 (citing *United States ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1524 (9th Cir. 1995), *vacated on other grounds*, 520 U.S. 939 (1997)). However, the District Court held that, even if it were to consider the new theories, it would find no merit in them. *Id.* at 1096–97. This Court takes a similar approach in today's Decision.

[22] Rescission under TILA raises a host of substantive issues. One is whether the Court should entertain rescission where the debtor has not made, or shown an ability to make, a tender
(continued...)

MEMORANDUM OF DECISION - 15

facts as were presented in the State Court Case and should have been, but was not, raised by Debtor in such action.[23] Claim preclusion, as discussed more fully above, bars its assertion at this time.

The second reason flows from TILA requirements themselves. The deadline for TILA rescission is generally three days after the transaction at issue is consummated. 15 U.S.C. § 1635(a). But if the lender fails to provide the Act's required disclosures, the rescission right continues and "shall expire three years after the date of consummation of the transaction or upon sale of the property, whichever comes first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor[.]" 15 U.S.C. § 1635(f). Defendants maintain, and the undisputed facts before the Court support, that the transaction here was consummated on May 18, 2005, when the note was signed and the deed of trust was signed and notarized.[24] Even assuming (though not finding) there was a lack

---

[22] (...continued)
of the amount owed creditor (less finance charges and penalties) required to restore status quo ante. *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1172–73 (9th Cir. 2003). *See also Demarest v. Ocwen Loan Servicing, LLC*, 481 Fed. App'x. 352, *1 (9th Cir. Sept. 21, 2012); *Burton v. Countrywide Bank, FSB*, 2012 WL 976151, *9 (D. Idaho Mar. 1, 2012). For the reasons discussed, *infra*, the Court will not reach these other questions.

[23] State courts have concurrent jurisdiction with federal courts to hear TILA claims. *See R.G. Fin'l Corp. v. Vergara-Nunez*, 446 F.3d 178, 184 (1st Cir. 2006) (citing 15 U.S.C. § 1640(e)).

[24] Debtor's reliance on *Jackson v. Grant*, 890 F.2d 118 (9th Cir. 1989) is unavailing. There the lender was unidentifiable and no contract was consummated. Here, the lender—Lehman Brothers—was clearly identified on both the note and deed of trust.

MEMORANDUM OF DECISION - 16

of required disclosures,[25] the right of rescission expired three years from that date. The first and earliest notice of rescission was sent on October 1, 2012, and was therefore ineffective.

Debtor argues that the untimely rescission notice is saved by *Jesinoski v. Countrywide Home Loans, Inc.*, __ U.S. __, 135 S. Ct. 790 (2015). However, that decision does not support a never-ending right to rescind or an extension of the three-year rescission period prescribed by TILA. Rather, *Jesinoski* simply distinguishes the required timely notice of rescission from a deadline to file suit:

> The language [of 15 U.S.C. § 1635] leaves no doubt that rescission is effected when the borrower notifies the creditor of his intention to rescind. It follows that, so long as the borrower notifies within three years after the transaction is consummated, his rescission is timely. The statute does not also require him to sue within three years.

*Id.*, 135 S. Ct. at 792. The three-year statutory limit on rescission, triggered by consummation of the transaction, applies even though there is no requirement to file suit within that period. *Jesinoski* also specifically recognized that in a previous case, where a borrower had attempted to rescind in the course of a foreclosure action commenced six years after the loan's consummation, the Court concluded that "there was no 'federal right to rescind, defensively or otherwise, after the 3-year period of § 1635(f) has run.'" *Id.* (quoting *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 419 (1998)).

---

[25] TILA requires various disclosures depending on the nature of the transaction. *See* 15 U.S.C. §§ 1632, 1635, 1637, 1637a, 1638, and 1639. Debtor asserts Defendants' predecessors in interest failed to "fully disclose all terms and conditions" required under § 1635 because they failed to provide her with notice that the note and/or deed of trust, or the rights thereunder, might be later assigned. No authority for that proposition was provided.

MEMORANDUM OF DECISION - 17

Evidently recognizing the difficulties faced with the three-year limitation, Debtor argues that the bar of 15 U.S.C. § 1635 should be equitably tolled. *Leong v. Potter*, 347 F.3d 1117 (9th Cir. 2003), notes that equitable tolling "focuses on a plaintiff's excusable ignorance and lack of prejudice to the defendant." *Id.* at 1123. It can "excuse a claimant's failure to comply with the time limitations where she had neither actual nor constructive notice of the filing period." *Id.* at 1123 (citing *Leorna v. U.S. Dep't of State*, 105 F.3d 548, 551 (9th Cir. 1997)).

> However, "once a claimant retains counsel, tolling ceases because she has gained the means of knowledge of her rights and can be charged with constructive knowledge of the law's requirements." *Leorna*, 105 F.3d at 551 (internal citations omitted). Leong did not attempt to file a disability discrimination charge with the EEOC or to amend his original charge to include a new basis of discrimination after retaining counsel. The district court held that even if equitable tolling were available, tolling would excuse delay, but not Leong's complete failure to file a disability claim with the EEOC.

*Leong*, 347 F.3d at 1123.

As noted earlier, Debtor had attorney Hoyt appear to argue her appeal at the Idaho Supreme Court in *Edwards v. MERS*. But he was not the first lawyer to appear for Debtor in the State Court Case. On April 28, 2010, attorney Monica Flood Brennan appeared as counsel for Debtor before the Idaho state court.[26] Even if a basis for equitable tolling existed, it terminated well before the October

---

[26] The Idaho Supreme Court's Repository lists Kootenai County Case No. CV-2010-0002745 (*Edwards v. Lehman Brothers Bank, FSB, et al.*), and shows the date of appearance by counsel. The Repository is available online at https://www.idcourts.us/repository and is searchable by litigant name and County. The Court may take judicial notice of these public records under Fed. R. Evid. 201(b)(2). *See Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

MEMORANDUM OF DECISION - 18

2012 notice of rescission relied on by Debtor.

The Court finds equitable tolling unavailable to save the notice of rescission. That notice was untimely under 15 U.S.C. § 1635(f) and thus ineffective. The TILA rescission claim advanced in the suggested amended complaint, even should it be considered despite its not being raised in the State Court Case and even though it was raised for the first time in this case in opposition to summary judgment, fails on the merits.

## CONCLUSION

Based on the foregoing, the Court finds the Motion well taken and summary judgment will be granted for Defendants. Counsel for Defendants shall prepare a form of order granting the Motion, denying Plaintiff's motion for leave to file an amended complaint, and dismissing the complaint herein as against them.

DATED: August 13, 2015

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE